**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARQUEZ SMITH,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-2939** |
| | : | |
| **JOHN POHOPIN, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**MARSTON, J.**                                                                              **APRIL 13, 2026**

Marquez Smith filed a *pro se* Complaint on May 30, 2025 while he was incarcerated at

SCI Chester.  Smith asserted constitutional claims against two correctional officers at the Bucks

County Correctional facility ("BCCF"), where he was previously housed as a pretrial detainee.

Smith is no longer in custody and appears to have abandoned this case.  For the reasons set forth

below, the Court will dismiss this case for failure to prosecute.

**I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

Smith filed this action pursuant to 42 U.S.C. § 1983.  He named as Defendants two

BCCC officials:  Sergeant John Pohopin and Correctional Officer Donald Zephir.  (Compl. at 2.)

When he initiated the action, Smith was sent the "Notice of Guidelines for Representing

Yourself (Appearing Pro Se)."  (*See* ECF No. 2.)  In that document, Smith was advised that it

was his responsibility to keep the Court and opposing parties informed about his current address

and that his failure to do so could result in the dismissal of his case for failure to prosecute.  (*Id*.

at 2.)  A search of the Pennsylvania Department of Corrections' inmate locator website reveals

---

[1] The factual allegations set forth in this Memorandum are taken from Smith's Complaint (ECF No. 1).  The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

that Smith is no longer incarcerated within that system.  Smith did not update the Court on where he could be contacted about this case after his release.

In the Complaint, Smith alleges that on the morning of December 14, 2023, Defendant Zephir threatened him when placing handcuffs on him at the restricted housing unit ("RHU"). (*Id*. at 4-6.)  As Zephir was escorting Smith to the prison dispensary, Zephir grabbed Smith by the throat and slammed him against the wall.  (*Id*. at 6.)  Defendant Pohopin then arrived at the scene with other officers and grabbed Smith "by the neck and throat into a front headlock, slapping [] Smith on his head."  (*Id*.)  While leg shackles were placed on Smith, BCCF staff punched and kneed him.  (*Id*.)  He was ultimately "dragged" back to the RHU and placed on suicide watch as retaliation.  (*Id*.)  Based on these allegations, Smith asserted Fourteenth Amendment excessive force claims against Defendants Pohopin and Zephir and sought money damages.  (*Id*. at 3, 8.)

In an Order dated July 17, 2025, the Court granted Smith *in forma pauperis* status and directed the Clerk of Court to serve written waiver requests on Defendants Pohopin and Zephir to effect waiver of service pursuant to Federal Rule of Civil Procedure 4(d).  (ECF No. 6.)  When neither Defendant returned a waiver, on September 11, 2025, the Court directed the Clerk of Court to send Smith USM-285 Forms for Pohopin and Zephir to facilitate service of the Complaint on these Defendants by the United States Marshals Service ("USMS").  (ECF No. 10.)  Smith returned the USM-285 Forms, and the Court issued summonses and directed the U.S. Marshals to effect service.  (*See* ECF Nos. 12, 14.)  On October 21, 2025, the USMS returned the USM-285 Forms executed as to Defendant Pohopin but unexecuted as to Defendant Zephir, explaining that "Donald Zephir is no longer employed by Bucks County" and "[p]rocess cannot be accepted on his behalf."  (ECF No. 16 at 2.)  After an extension of time was granted for

Pohopin to respond to Smith's Complaint, Pohopin filed a Motion to Dismiss the Complaint on December 9, 2025. (ECF No. 19.) The Court directed Smith to file a response by January 12, 2026. (ECF No. 20.) Smith did not respond.

On February 10, 2026, the Court directed Smith to show cause why the case should not be dismissed for failure to prosecute due to his failure to respond to Defendant Pohopin's Motion to Dismiss. (ECF No. 21.) The Court also sent Smith another blank USM-285 Form for Defendant Zephir and advised Smith about the reasons that Defendant Zephir could not be served at the address provided. (*Id.*) The Court provided Smith with 21 additional days, or until March 3, 2026, to show cause why his case should not be dismissed and to provide an updated USM-285 Form for Zephir. After the Clerk sent Smith a copy of the February 10, 2026 Order, that mailing was returned from SCI Chester as "refused." (ECF No. 22.) A search of the Pennsylvania Department of Corrections' inmate locator website reveals that Smith is no longer incarcerated within that system. For the reasons set forth below, Smith's Complaint will be dismissed with prejudice.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action when a plaintiff fails to prosecute the case, fails to comply with the rules of procedure, or fails to comply with a court order. *See* Fed. R. Civ. P. 41(b). "A District Court has the authority to dismiss a suit *sua sponte* for failure to prosecute by virtue of its inherent powers and pursuant to Federal Rule of Civil Procedure 41(b)." *See Sebrell ex rel. Sebrell v. Philadelphia Police Dep't*, 159 F. App'x 371, 373 (3d Cir. 2005) (*per curiam*) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). Ordinarily, a court determining whether to *sua sponte* dismiss a case because of a plaintiff's failure to prosecute must consider several factors as set forth in *Poulis v. State Farm*

*Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984).  *See, e.g., Spain v. Gallegos*, 26 F.3d 439, 454-55 (3d Cir. 1994).  However, an analysis under *Poulis* usually is not required when a plaintiff willfully abandons the case or makes adjudication impossible.  *See Dickens v. Danberg*, 700 F. App'x 116, 118 (3d Cir. 2017) (*per curiam*) ("Where a plaintiff's conduct clearly indicates that he willfully intends to abandon the case, or where the plaintiff's behavior is so contumacious as to make adjudication of the case impossible, a balancing of the *Poulis* factors is not necessary.");  *Baker v. Accounts Receivables Mgmt., Inc.*, 292 F.R.D. 171, 175 (D.N.J. 2013) ("[T]he Court need not engage in an analysis of the six *Poulis* factors in cases where a party willfully abandons her case or otherwise makes adjudication of the matter impossible." (citing cases)).

In the context of a pending motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), granting a defendant's motion to dismiss a case where the plaintiff has failed to respond thereto is effectively akin to sanctioning the plaintiff for failing to comply with a local rule or court order, and a "drastic" sanction like dismissal with prejudice requires a *Poulis* analysis.  *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 29-30 (3d Cir. 1991).  A court cannot grant a Rule 12 motion as "unopposed" or "uncontested" without a *Poulis* analysis.  *See, e.g., Washington v. Wenerowicz*, No. 21-2741, 2022 WL 39870, at *2 n.5 (3d Cir. Jan. 5, 2022) (*per curiam*); *Adkins v. Reynolds*, 788 F. App'x 824, 828 (3d Cir. 2019) (*per curiam*).  That is so even if, as here, the plaintiff has been ordered to respond and warned that failure to respond could result in dismissal.  *Brzozowski v. Pennsylvania Tpk. Comm'n*, 738 F. App'x 731, 734 (3d Cir. 2018) (*per curiam*).  Thus, the Court will consider the *Poulis* factors to determine whether it is appropriate to dismiss Smith's case for failure to prosecute.

## III.    DISCUSSION

In *Poulis*, the United States Court of Appeals for the Third Circuit articulated six factors

to consider when determining whether to dismiss an action due to a plaintiff's failure to prosecute:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary . . . ; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

747 F.2d at 868 (emphasis omitted).  Not all of the *Poulis* factors must be satisfied in order for a court to dismiss a complaint.  *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003); *Shahin v. Delaware*, 345 F. App'x 815, 817 (3d Cir. 2009) (*per curiam*).  In this case, an assessment of the *Poulis* factors weighs in favor of dismissing this action.

The first Poulis factor—the extent of the party's personal responsibility—weighs in favor of dismissal.  It is Smith's sole responsibility to prosecute his case and comply with Court orders. *See Briscoe v. Klaus*, 538 F.3d 252, 258-59 (3d Cir. 2008) (explaining that "a *pro se* plaintiff is personally responsible for complying with the court's orders" and "it is logical to hold a pro se plaintiff personally responsible for delays in his case because a pro se plaintiff is solely responsible for the progress of his case"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) (concluding that where a litigant was proceeding *pro se*, any failure to comply with orders was attributable to him).  Smith was ordered to respond to the Motion to Dismiss and failed to do so.  Moreover, as a *pro se* litigant, Smith is likewise responsible for keeping his address current with the Court.  *See Carey v. King*, 856 F.2d 1439, 1441 (9th Cir. 1998) (observing that "[a] party, not the district court, bears the burden of keeping the court apprised of any changes in his mailing address"); *Stephen v. United States Attorney Gen.*, No. 18-0615, 2020 WL 832914, at *3 (M.D. Pa. Jan. 10, 2020) ("With regard to the first *Poulis* factor, the responsibility to keep the Court informed of his current address was solely Plaintiff's."), *report and recommendation*

*adopted,* 2020 WL 820192 (M.D. Pa. Feb. 19, 2020). The docket reflects that Smith received the Court's standard notice informing him of his responsibility to keep his address current in accordance with Local Rule 5.1(b) and warning him that failure to do so "could result in Court orders or other information not being timely delivered, which may result in your case being dismissed for failure to prosecute . . . ." (ECF No. 2 at 2.) However, Smith has not provided the Court with his address after his release and, accordingly, cannot receive Court orders or prosecute this litigation.

The second factor—prejudice to Defendants—also weighs in favor of dismissal. "Examples of prejudice include 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'" *Adams v. Trustees of New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994) (quoting *Scarborough v. Eubanks*, 747 F.2d 871 (3d Cir. 1984)). "[W]hile 'prejudice' for the purpose of *Poulis* analysis does not mean 'irremediable harm,' the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Ware*, 322 F.3d at 222. It is unclear how this case could proceed without Smith's participation. "Simply put, there is no way for Defendants to defend against Plaintiff's claims in his absence." *Stephen*, 2020 WL 832914, at *3. Accordingly, requiring Defendant Pohopin to proceed in this context would be prejudicial.[2]

The third factor—a history of dilatoriness—also weighs in favor of dismissal. The factor must be assessed over the lifetime of the case, keeping in mind that "conduct that occurs one or two times is insufficient." *Briscoe*, 538 F.3d at 261. However, "[e]xtensive or repeated delay or

---

[2] The Court notes that because Defendant Zephir has not yet been served, there appears to be no prejudice to this Defendant.

delinquency constitutes a history of dilatoriness, such as . . . consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874.  Initially, Smith responded to Court orders and actively followed case progress.  However, since his release from incarceration, he has failed to respond to Orders or update the Court with his current address.  Thus, the litigation cannot proceed beyond this point, and the delay is solely attributable to Smith.  Smith's absence of action suggests an intention to abandon his case.

The fourth factor—whether the plaintiff's conduct was willful or in bad faith—is neutral because the Court cannot say whether Smith's "failure to update his address was 'willful' or 'in bad faith' because, given his unknown whereabouts, we cannot ask him." *Welch v. City of Philadelphia*, No. 11-4670, 2012 WL 1946831, at *3 (E.D. Pa. May 30, 2012); *see also El-Hewie v. Paterson Pub. Sch. Dist.*, Civ. A. No. 13-5820, 2015 WL 5306255, at *4 (D.N.J. Sept. 10, 2015) (where a litigant "has been silent, and that silence is ambiguous," the court could not conclude that litigant acted willfully or in bad faith for purposes of the fourth *Poulis* factor). Smith is aware of his obligation to keep his address current with the Court and yet he has failed to do so.  Nevertheless, on this record, Smith's failures could be construed as more consistent with negligence or inadvertence rather than bad faith.

The fifth factor—the effectiveness of sanctions other than dismissal—weighs in favor of dismissing this case.  Smith is proceeding *pro se* and is likely unable to pay monetary sanctions given his request to proceed *in forma pauperis*. *See Adonai-Adoni v. King*, 506 F. App'x 116, 119 (3d Cir. 2012) (*per curiam*) ("Because Adonai–Adoni proceeded pro se and in forma pauperis, monetary sanctions were not a viable form of alternative sanction.").  Moreover, the Court has no way of imposing those sanctions on Smith without the ability to contact him. *See McLaren v. New Jersey Dep't of Educ.*, 462 F. App'x 148, 149 (3d Cir. 2012) (*per curiam*)

("[A]lthough courts are normally required to consider whether a lesser sanction would be appropriate, the district court could not contact the plaintiff to threaten her with some lesser sanction." (internal citations and alterations omitted)); *Lear v. Dahaus*, No. 03-1156, 2006 WL 1508667, at \*3 (W.D. Pa. May 31, 2006) ("The fifth *Poulis* factor weighs in favor of dismissal for failure to prosecute, given that Plaintiff cannot be contacted, it is difficult to see how any lesser sanction, of which Plaintiff cannot be made aware, would serve the interests of justice or judicial economy.").

Lastly, regarding the sixth factor, a claim is considered meritorious when the allegations of the complaint, if established at trial, support recovery. *See Poulis*, 747 F.2d at 869-70. Smith's Complaint raised a violation of his Fourteenth Amendment right to be free from excessive force. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation and citation omitted). At this early stage of the litigation, based solely on the facts alleged in the Complaint, it is possible that Smith's excessive force claims could have merit, but not without amending his complaint. To state a due process violation based on excessive force, a pretrial detainee must allege plausibly that "the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396-97. "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used:  the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. at 397.  Whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each

8

particular case.'" *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The Complaint does not contain facts sufficient to indicate whether the force used was objectively reasonable based on the totality of the circumstances, including the relevant facts and circumstances leading up to the alleged use of force by Defendants Pohopin and Zephir. Defendant Pohopin argues in his Motion to Dismiss that his use of force was not "excessive" in context because it was used to respond to a "physical altercation between an inmate and an officer within a correctional facility." (ECF No. 19 at 10.) Smith concedes that the officers were trying to "subdue" him (*see* Compl. at 7), but he does not allege any facts about the context leading up to the altercation to support why he needed to be subdued by Defendants. Smith simply has not alleged facts in his Complaint that would allow the Court to draw the reasonable inference that any Defendant is liable for the misconduct alleged. *See, e.g., Rodriguez v. Trenton Police Dep't*, 828 F. App'x 851, 852 (3d Cir. 2020) (*per curiam*) (affirming dismissal of excessive force claim where plaintiff failed to sufficiently describe the officer's actions or plaintiff's actions leading up to the time the officers allegedly used excessive force). Accordingly, Smith's claims, as drafted, lack merit. Moreover, if Smith cannot be reached by the Court, it is not possible to move this litigation forward. A plaintiff must pursue his claims, rather than abandon them, if he is to recover. Smith's conduct is simply "incompatible with maintaining a lawsuit." *Stephen*, 2020 WL 832914, at *4; *Smith v. Atlas Fitness Incorporation Sys.*, No. 10-1021, 2011 WL 3608601, at *3 (M.D. Pa. July 20, 2011) ("Since no party is actively litigating this case at present it is impossible to assess what merit, if any, there may be to these claims."), *report and recommendation adopted*, 2011 WL 3608594 (M.D. Pa. Aug. 16, 2011).

9

## IV.    CONCLUSION

In sum, upon balancing the *Poulis* factors, the Court finds that they weigh in favor of dismissing this action pursuant to Federal Rule of Civil Procedure 41(b) for Smith's failure to prosecute.  Smith does not put forth a meritorious constitutional claim against either Defendant. Even if he did, there is no way for this litigation to proceed without Smith's participation.  An Order follows, which dismisses this case.

**BY THE COURT:**


**\s\ Karen Spencer Marston**
**KAREN SPENCER MARSTON, J.**
